# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

CAROLYN JUNE RIDER, *as*
*the Administratrix of the Estate of*
*the late Julius Hampton Rider III,*
*and in her own right*,

                Plaintiff,

v.                                    CIVIL ACTION NO.   5:15-cv-06102

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

                Defendant.

### MEMORANDUM OPINION AND ORDER

The Court has reviewed *Reliance Standard Life Insurance Company's Motion for Summary Judgment* (Document 26), the *Memorandum of Law in Support of Defendant Reliance Standard Life Insurance Company's Motion for Summary Judgment* (Document 27) and the *Plaintiffs Resistance to the Defendant's Motion for Summary Judgment* (Document 29). The Court has also reviewed the Plaintiff's *Motion for Summary Judgment* (Document 28), the *Defendant's Memorandum of Law in Opposition to Plaintiff's Cross Motion for Summary Judgment* (Document 32), and the *Plaintiff's Memorandum of Law in Response to Defendant's Memorandum of Law in Opposition to Plaintiff's Cross Motion for Summary Judgment* (Document 33) together with all exhibits.   For the reasons set forth herein, the Court finds that the Defendant's motion for summary judgment should be granted, and the Plaintiff's motion for summary judgment should be denied.

1

## PROCEDURAL HISTORY

The Plaintiff initiated this civil action with the filing of a *Complaint* (Document 1-1) in the Circuit Court of Summers County, West Virginia.   Therein, the Plaintiff, Carolyn June Rider (Ms. Rider), as administratrix of the estate of the late Julius Hampton Rider, III (Mr. Rider), alleged that the Defendants, Reliance Standard Life Insurance Company (Reliance) and Appalachian Regional Healthcare (ARH), fraudulently denied Mr. Rider benefits due to him under a group life insurance policy maintained by his former employer, ARH; negligently failed to provide Mr. Rider with information about converting his group life insurance to an individual policy; and breached their contract with Mr. Rider by failing to pay his estate the benefits due upon his death.   On May 13, 2015, Reliance and ARH removed the case to this Court, asserting that the Plaintiff's claims were governed by the Employee Retirement and Income Security Act (ERISA), 29 U.S.C. §§ 1001, *et. seq.*, and therefore within the subject matter jurisdiction of this Court.

On July 24, 2015, Ms. Rider filed an *Amended Complaint* (Document 14).   The amended complaint alleged various claims under West Virginia law, including breach of contract and fraud, and also stated a claim under ERISA.   Both Reliance and ARH moved to dismiss the amended complaint.   On October 21, 2015, the Court issued a *Memorandum Opinion and Order* (Document 20), finding that Ms. Rider's state law claims were preempted by ERISA, and re-characterizing Ms. Rider's ERISA claim as a claim for benefits pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).   On January 19, 2016, the Court issued an *Agreed Partial Dismissal Order* (Document 25) voluntarily dismissing ARH from this case, based on all claims against ARH having been settled, compromised, or otherwise resolved.

On April 21, 2016, after the close of discovery, Reliance moved for summary judgment. Ms. Rider filed her response and her motion for summary judgment on April 28, 2016.     Reliance filed its response on May 9, 2016, and Ms. Rider filed a reply on May 20, 2016.   The cross-motions for summary judgment are therefore ripe for review.

## STATEMENT OF FACTS

The Plaintiff in this case, Ms. Rider, represents the estate of Mr. Rider, who was a long time employee of Summers County Hospital, in Summers County, West Virginia.   Mr. Rider oversaw maintenance at the hospital.   At some point, Summers County Hospital was acquired by ARH, and Mr. Rider became an employee of ARH.   As an ARH employee, he received group life insurance through a policy purchased by ARH from Reliance, policy number GL 96,000, which went into effect on October 1, 1985.   (Life Insurance Policy, att'd as Ex. A to Def.'s Mot. for Summ. J., at AR0001.)   Significantly for ERISA purposes, the Life Insurance Policy states that Reliance will serve as the "claims review fiduciary," and has "the discretionary authority to interpret [the Life Insurance Policy] and to determine eligibility for benefits."   (Def.'s Mem. in Supp. of Mot. for Summ. J., at 1.)   The premiums for this policy were deducted from Mr. Rider's paycheck.   On December 11, 2012, after his diagnoses with acute myeloid leukemia, Mr. Rider ceased to be a full-time employee at ARH.   Mr. Rider's group life insurance coverage at that time provided for a death benefit of $18,000.   On January 13, 2103, Reliance approved Mr. Rider for payment of short term disability benefits, provided under a separate policy held by ARH.

Under the terms of the Life Insurance Policy, Mr. Rider had the option to convert his group policy to an individual policy when his group insurance was no longer "in force."   (Conversion Privilege, at AR00017, att'd as Ex. A to Pl.'s Mot. for Summ. J.)   The privilege entitled Mr. Rider

to an individual life insurance policy "[i]f the [group] insurance ceases due to termination of employment or membership in any of the Participating Unit's classes." (*Id.*)   Mr. Rider was required to submit a written application to exercise this conversion privilege within thirty-one days of terminating his employment.   If Mr. Rider wanted to change the amount of insurance, the change would not take effect until "the first of the Policy month coinciding with or next following the date of the change," and he was required to be "actively at work" on the date of the change. (Life Insurance Policy, at AR0009, att'd as Ex. A to Def.'s Mot. for Summ. J.)   If Mr. Rider was not "actively at work" on the date of the policy change," the change would not take effect until the "day after the insured has been Actively At Work for one day." (*Id.*)   The policy defines "Actively At Work" as "actually performing on a Full-time or Part-time basis each and every day pertaining to his/her job in the place where and the manner in which the job is normally performed," and does not "include time off as a result of injury or illness." (*Id.* at AR0011.)   If Mr. Rider was terminated from employment or otherwise ceased to be eligible for insurance under the Life Insurance Policy as a result of illness or injury, Mr. Rider could continue his insurance for up to twelve months by paying the insurance premium.   (*Id.* at AR0015.)

ARH placed Mr. Rider on leave under the Family and Medical Leave Act (FMLA) on December 14, 2012, and continued to pay the premiums for his life insurance policy.   Mr. Rider believed that he was free to return to ARH at any time as a full-time employee.   On March 11, 2013, Mr. Rider was placed on short-term disability status by ARH, and on unpaid leave.

On March 21, 2013, Mr. Rider submitted an application to Reliance to increase the face amount of his group life insurance policy to $89,000.[1]   As part of that application, Mr. Rider

---

[1]  Reliance records indicate that while Mr. Rider signed and dated this form on November 5, 2012, the form was not received by Reliance's Medical Underwriting team until March 21, 2013.  (Reliance Records, at AR0093, att'd as

completed an evidence of insurability form, wherein he checked "no" to a question regarding whether, within the past 5 years, he had been diagnosed or treated for "[d]iabetes; goiter; tumor; cancer; or growth of any kind."  (Evidence of Insurability form, at AR0121, att'd as Ex. A to Def.'s Mot. for Summ. J.)

On March 22, 2013, Reliance approved Mr. Rider's request for an increase in the face amount of his group life insurance.  Reliance sent Mr. Rider a letter informing him of the approval, and indicating that his "Employee Non Guaranteed Issue Amount" was $89,000, with an effective date of April 1, 2013.  (Approval Letter, at AR0123, att'd as Ex. A to Pl.'s Mot. for Summ. J.)  The letter contained the following stipulation:

> Please note that this coverage approval is conditioned upon there being a valid group policy in effect between your employer and Reliance Standard.  If there is no valid group policy in effect, or if the group policy terminates, you will not have coverage … Coverage is also subject to the terms and conditions of the Policy …"

*Id.*  The letter was signed by Margaret A. Simon, Manager of Reliance's Medical Underwriting and VGTL Department.  On March 31, 2013, ARH ceased paying premiums for Mr. Rider's group life insurance.[2]  At some point between May 28, 2013, and June 4, 2013, Mr. Rider was terminated by ARH.[3]  Ms. Rider claims that Mr. Rider never received an exit interview from

---

Ex. A to Def.'s Mot. for Summ. J.)

[2] Ms. Rider, in her response to the Defendant's motion for summary judgment, states that "by letter dated April 8, 2013, ARH and Reliance were withholding various monies from [Mr. Rider's] disability payments."  (Pl.'s Response, at 4.)  However, the relevant exhibit addresses Mr. Rider's disability income insurance, not his group life insurance.  (*See* April 8, 2013 letter, att'd as Ex. E to Pl.'s Mot. for Summ. J.)

[3] In its Memorandum in Support, Reliance states that Mr. Rider was "officially terminated" by ARH on May 28, 2013.  However, according to ARH and Reliance records, Mr. Rider was "moved to L[eave] W[ith]O[ut] P[ay]" status on March 11, 2013, and was given "another 12 weeks" before termination.  (Reliance Records, at AR00052, att'd as Ex. A to Def.'s Mot. for Summ. J.)  The records also state that Mr. Rider's "employment was term[inated] 5/28/14 …," but that "6/4/13 was probably the date the information was entered into the computer system.  Thus, it appears that Mr. Rider was terminated from his employment at ARH at some point between May 28, 2013 and June 4, 2013.

ARH, and was never given formal notice of his termination.   There is no record that after his termination by ARH, Mr. Rider applied to convert his group life insurance policy to an individual life insurance policy within the thirty-one day time limit provided by the Life Insurance Policy. On July 27, 2013, Mr. Rider succumbed to his illness.   Sometime thereafter, Ms. Rider filed a Proof of Loss Claim for death benefits under the Life Insurance Policy through ARH.   Reliance ultimately denied the claim for benefits.   On July 1, 2014, counsel for Ms. Rider contacted Reliance to appeal the denial of benefits and request an explanation.   (Reliance Records, at AR0048, att'd as Ex. A to Def.'s Mot. for Summ. J.)   Reliance affirmed the denial of benefits, and provided three reasons for the decision to deny the claim.   First, Reliance stated that Mr. Rider was not insured under the Life Insurance Policy at the time of his death, because insurance premiums had not been paid for his coverage since March of 2013.   Second, Reliance stated that Mr. Rider did not seek to convert his group life insurance coverage to an individual policy within the prescribed time limit under the Life Insurance Policy.   Third, Reliance stated that because Mr. Rider was older than 60 years of age when he became totally disabled, the waiver of premium for total disability provision of the Life Insurance Policy did not apply to him.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could

affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.  *Hoschar*, 739 F.3d at 169.   However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action."  *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986).   If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson*,

477 U.S. at 250.   If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."   *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review.   *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd*, 474 F. App'x 101 (4th Cir. 2012).   Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion.   *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

## DISCUSSION

Section 502(a)(1)(B) of ERISA empowers a plan participant to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan."   29 U.S.C. §1132(a)(1)(B).   If a plan denies benefits to a participant, and that participant brings a civil action under Section 502(a)(1)(B), courts will generally review the decision under a *de novo* standard.   *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).   However, if the plan grants discretionary authority to make decisions regarding claims by plan participants to a fiduciary, courts apply a more deferential standard of review.   *Id.*   More specifically, "[w]hen a plan by its terms confers discretion on the administrator to interpret its provisions and the administrator acts reasonably

8

within the scope of that discretion, courts defer to the administrator's interpretation."  *DuPerry v. Life Ins. Co. of America*, 632 F.3d 860, 869 (4th Cir. 2011), quoting *Colucci v. Agfa Corp. Severance Pay Plan*, 431 F.3d 170, 176 (4th Cir. 2005).  ERISA defines a fiduciary as a party who "has any discretionary authority in the administration" of an ERISA plan.  29 U.S.C. §1002(21)(a).  Because ERISA embodies principles of trust law, where an ERISA plan vests discretionary authority for determinations of benefits in a fiduciary, courts will review such determinations for abuse of discretion.  *Firestone*, 489 U.S. at 111.  Under this standard, courts will uphold discretionary determinations by an ERISA plan fiduciary that are reasonable.  *Smith v. Cont'l Cas. Co.*, 369 F.3d 412, 417 (4th Cir. 2004), citing *Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000).  A plan administrator's decision is reasonable if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence."  *DuPerry*, at 869, quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995).

Here, it is clear that Reliance acted as a fiduciary over the Life Insurance Plan within the meaning of ERISA, as Reliance was granted discretion to make plan decisions regarding the payment of claims and the interpretation of plan provisions.  Therefore, the Court must review Reliance's decision to deny Mr. Rider's claims under an abuse of discretion standard, and determine whether Reliance's decision was reasonable.  To make this determination, the Fourth Circuit has set forth eight non-exclusive factors for courts to consider:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any

external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*DuPerry*, 632 F.3d at 869, quoting *Booth,* 201 F.3d at 342-43.   In this case, based on the evidence before the Court, the most relevant factors are (1) the language of the plan; (2) the adequacy of the materials considered to make the decision and the degree to which they support it; (3) whether the decision-making process was reasoned and principled; (4) whether the decision was consistent with the procedural and substantive requirements of ERISA; and (5) the fiduciary's motives and any conflict of interest it may have.

*A) The Policy Language*

A review of the Life Insurance Policy and the relevant facts make clear that at the time Mr. Rider ceased his full-time employment at ARH on December 11, 2012, he was covered by the Life Insurance Plan with a death benefit of $18,000.   That death benefit would remain in force as long as Mr. Rider or ARH continued to make premium payments for the coverage to Reliance, or until Mr. Rider was formally terminated from his employment at ARH.   If Mr. Rider was terminated, he could maintain his group insurance benefits under the Life Insurance Policy for up to twelve months in the case of illness or injury, or one month for a temporary lay-off, by paying the premium.   If terminated, Mr. Rider retained the right to convert his group life insurance policy to an individual policy, by exercising his conversion privilege through a formal application.   If Mr. Rider wished to increase the value of his group life insurance benefits, he could do so, but the change would not take effect until the day after he was "actively at work" for at least one day, within the meaning of the terms of the Life Insurance Policy.

It is undisputed that no payments were made on Mr. Rider's policy from April of 2013 through his death in July of 2013.   Therefore, under the plain language of the policy, Mr. Rider's

10

insurance benefits would have lapsed by May 1, 2013, at the latest.   It is further undisputed that

Mr. Rider was terminated from his employment at ARH between May 28 and June 4, 2013.   Ms.

Rider attempts to mitigate this fact by asserting that Mr. Rider believed he could return to ARH

should he recover from his illness, and that he did not receive an exit interview.   However, these

statements do not create a genuine issue of material fact as to whether Mr. Rider was terminated.

As a result of his termination, Mr. Rider could only continue his life insurance benefits – which

had arguably already lapsed under the terms of the Life Insurance Policy - by paying the premium.

Ms. Rider provides no evidence that he did so.

Nor is there any evidence that Mr. Rider sought to convert his insurance policy to an

individual policy.   The Life Insurance Policy conversion privilege required Mr. Rider, if he were

to seek to convert his group life insurance benefits to an individual policy, to file a written

application.   No such application is before the Court.   Nonetheless, Ms. Rider argues that the

March 22, 2013 letter must be understood as a response by Reliance to an application for individual

insurance, filed by Mr. Rider pursuant to his rights under the terms of the Life Insurance Policy.

(Def.'s Response, at 3-4).[4]   Even if Ms. Rider were correct in this contention – and no facts before

---

[4]  In particular, Ms. Rider focuses on the language of the letter informing Mr. Rider that "your application for Basic Life Insurance with our company … has been approved."  Ms. Rider cites this language as evidence that Mr. Rider filed an application for individual insurance under the conversion privilege, rather than seeking to increase the face amount of his group insurance coverage.  (Pl.'s Response, at 4.)  The plain language of the Conversion Privilege section of the Life Insurance Policy suggest otherwise.  First, the Conversion Privilege stipulates that individual insurance under the conversion privilege will only be issued "for an amount not over what the insured had before he/she terminated."  (Conversion Privilege, at AR0017, att'd as Ex. A to Def.'s Mot. for Summ. J.)  Here, there is no dispute that Mr. Rider sought to increase the face amount of his coverage, from $18,000 to $89,000.  If he were exercising the conversion privilege based on his termination from ARH, he would have been limited to the face amount of his group life insurance policy at the time of his termination - $18,000.  Second, the Conversion Privilege is expressly limited to situations where insurance "ceases due to Termination" or "membership in any of the Participating Unit's classes."  Ms. Rider has provided no evidence that Mr. Rider believed he had been terminated from ARH.  Instead, Ms. Rider repeatedly stated that Mr. Rider believed he was still technically employed as of the date of his death.  Ms. Rider provides no explanation for why Mr. Rider would seek to exercise a right only made available upon termination or other adverse employment event if he believed he were still an employee of ARH.  Finally, the Conversion Privilege stipulates that "Proof of good health is not required."  (Id.)  Yet, as Reliance has shown, Mr.

11

the Court suggest that she is – there is no evidence showing that premium payments were made on such an individual policy.   It is axiomatic that without payment of premium, life insurance coverage will not remain in force.   Ms. Rider does not provide the Court with a scintilla of evidence suggesting that any premium payments were made for this hypothetical policy.   And while Ms. Rider goes to great lengths to protest that she received no notice of any requirement that she make premium payments, she provides the Court with no law demonstrating that Reliance was under any legal obligation to notify Mr. Rider about his conversion privilege, or his failure to exercise that privilege.   Reliance, meanwhile, points the Court to *Harris v. Aetna Life Ins. Co.*, 2013 WL 5935144 (D.S.C. Nov. 5, 2013), where the District Court for the District of South Carolina found that there was no duty under ERISA for an insurer to provide notice of a "participant's right of conversion unless the plan requires such action."[5]

The facts indicate, to the contrary, that Mr. Rider merely sought to increase the face value of the policy.   For such a change to become effective under the terms of the Life Insurance Policy, Mr. Rider was required to return to work for at least one full day.   There is no evidence before the

---

Rider submitted an Evidence of Insurability document alongside his purported application for the conversion privilege. If, by the plain language of the Life Insurance Policy, proof of good health is not required for exercising the conversion privilege, the only permissible inference that can be drawn from Mr. Rider's completion of the evidence of insurability document is that he was not seeking to convert his group policy to an individual policy, but rather seeking to raise the face amount of his group policy.

[5]   The parties vigorously contest the issue of whether Reliance was required to provide additional notice to Mr. Rider regarding his rights under the Life Insurance Policy.   The case law cited by the Defendant in his *Memorandum in Support* is persuasive. The Court finds that while Reliance could have taken more diligent measures to ensure that Mr. Rider was aware of his rights and the status of his coverage, ERISA imposes no legal duty requiring such measures. In particular, the Sixth Circuit has expressly limited the duties of ERISA plan administrators to providing a summary of plan description and information on the benefit plan, while the Third Circuit has held that ERISA plan participants are responsible for informing themselves of their rights under ERISA plans.   *See Walker v. Fed. Exp. Corp.*, 492 F.App'x 559, 566 (6th Cir. 2012); *Jordan v. Fed Express Corp.*, 116 F.3d 1005, 1016 (3rd Cir. 1997).   Perhaps most significantly, this issue would relate to whether there was a breach of fiduciary duty by Reliance under ERISA, not whether the Plaintiff was wrongfully denied a benefit under an ERISA plan.   This is a separate issue, and Ms. Rider has not stated a claim for breach of fiduciary duty under Section 502(a)(3)(B) of ERISA, 29 U.S.C. §1132(a)(3)(B).

Court that Mr. Rider ever returned to work.    Therefore, while Reliance did send Mr. Rider a letter

informing him that his requested change in life insurance benefits had been approved, that approval

was subject to the terms and conditions of the Life Insurance Policy – which required that he return

to work for at least one full day before such a change would become effective. Moreover, even if

Mr. Rider had returned to work, the change in death benefit would only be effective under the

terms of the Life Insurance policy if he, or ARH, were to resume paying the premium for the

policy.    There is no evidence that any premium payments were made for his group life insurance

benefits after April 1, 2013.    Without payment of the premium, Mr. Rider has no valid claim for

death benefits under the Life Insurance Policy.[6]    Thus, based on a thorough review of the policy

language and the supported facts, as disclosed by the parties in their respective submissions, there

is no genuine issue of material fact as to whether Reliance made a reasonable decision in denying

coverage to Mr. Rider.

*B) The Adequacy of the Materials to Support the Decision*

The facts before the Court indicate that, in affirming the denial of benefits and processing

the appeal requested by counsel for Ms. Rider, Reliance examined all of the relevant documents

regarding Mr. Rider's group life insurance, made a reasonable decision to deny payment of Ms.

Rider's claim, and that the documents support the decision.    Specifically, representatives of

Reliance examined the premium history of the policy, the timeline of Mr. Rider's illness and

subsequent placement by ARH on FMLA leave, Mr. Rider's termination from ARH, and the

circumstances surrounding the approval letter for the $89,000 in life insurance.    (Reliance

---

[6] Ms. Rider claims, in her Response, that on April 8, 2013, Reliance and ARH sent a letter stating that they were
withholding various monies from Mr. Rider's disability payments.    As noted in Note 2, *supra*, this letter referred to
Mr. Rider's disability insurance, not his group life insurance policy.    There is no evidence showing that any monies
were withheld from Mr. Rider's disability payments to pay premiums on Mr. Rider's group life insurance.

Records, at AR0048-49, att'd as Ex. A to Def.'s Mot. for Summ. J.)   Excerpts from the letter explaining the decision show that Reliance accurately determined that Mr. Rider was not insured at the time of his death on July 27, 2013, because premium payments for his policy ceased more than three months prior to that date.   (*Id*. at AR0093.)   The letter further explains, correctly, that Mr. Rider did not apply for individual insurance coverage, and that he therefore did not have individual life insurance coverage at the time of his death.   (*Id*.)   Ms. Rider provides no evidence indicating that Reliance's decision is based on inadequate documentation, or that the documents it relied upon failed to support the decision.

*C)   Whether the Decision was Reasoned and Principled*

A brief review of the decision by Reliance in this case, and the materials relied upon by Reliance in support of that decision, is sufficient for the Court to conclude that the decision was both reasoned and principled.   The facts before the Court indicate that Reliance reviewed Mr. Rider's claim, determined that the policy was no longer in force and that premiums had not been paid on the policy for several months prior to the claim, and also determined that Mr. Rider was no longer employed by ARH.   Based on these factors, Reliance determined that under the terms of the Life Insurance Policy, Mr. Rider was not eligible for a death benefit at the time he died. Ms. Rider provides no factual evidence tending to prove that the decision of Reliance was either unreasonable or unprincipled.

*D)   Consistency with the Procedural and Substantive Requirements of ERISA*

Ms. Rider has set forth no evidence or argument indicating that Reliance's decision regarding Mr. Rider's claim violated any of the procedural or substantive requirements of ERISA. The Court's review of the ERISA regulations has identified no such violations.

14

*E)   The Fiduciary's Motives and any Conflicts It May Have*

The Supreme Court has recognized that while a fiduciary's decisions under ERISA are reviewed for abuse of discretion, a factor in that review must be whether there is a conflict of interest on the part of the fiduciary.   *Metropolitan Life*, 554 U.S. at 112.   Here, because Reliance not only collects premiums and pays benefits due under the Life Insurance Policy, but also evaluates claims for merit, Reliance arguably has a conflict of interest in determining whether claims for death benefits are valid.   However, the evidence before the Court clearly indicates that there is no genuine issue of material fact as to whether Reliance abused its discretion.   While a conflict of interest arguably exists, there is no evidence, or even a permissible inference drawn from the evidence, suggesting that Reliance improperly denied Mr. Rider's claim, or that the denial was based on a desire to materially benefit the company, in direct contravention of Reliance's fiduciary responsibilities.

## CONCLUSION

Wherefore, after careful consideration, the Court **ORDERS** that *Reliance Standard Life Insurance Company's Motion for Summary Judgment* (Document 26) be **GRANTED**, and that the Plaintiff's *Motion for Summary Judgment* be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        July 06, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

15